FILED
2016 Mar-29  PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| AMANDA GIBSON, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 7:14-cv-02002-LSC |
| RELIANT RENAL CARE-ALABAMA, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

## Memorandum of Opinion

Plaintiff Amanda Gibson ("Gibson") filed this action against Defendants Reliant Renal Care-Alabama, LLC and Reliant Renal Care, Inc. (collectively "RRC") asserting discrimination and retaliation claims under 42 U.S.C. § 1981 and Title VII, as well as a claim for breach of settlement agreement. Before the Court is Gibson's motion for partial summary judgment (Doc. 25) and RRC's motion for summary judgment. (Doc. 26.) Further, RRC has filed a motion to strike Gibson's jury demand (Doc. 75), and Gibson has filed a motion to strike certain of factual and evidentiary materials within RRC's motion for summary judgment. (Doc. 54.) For the reasons stated below, Gibson's motion for summary judgment is due to be denied, RRC's motion for summary judgment is due to be granted in part and denied in part, and RRC's motion to strike is due to be denied.

Gibson's motion to strike is moot in part, with other requested relief to be taken up at a hearing currently set for April 12, 2016.

## I.   BACKGROUND[1]

RRC, a provider of dialysis services, hired Amanda Gibson as a floor nurse in 2010. As part of the hiring process, Gibson filled out an application titled "Reliant Renal Care, Inc. Application for Employment," which included the following paragraph:

> I FURTHER UNDERSTAND AND AGREE THAT IN CONSIDERATION OF ANY OFFER OF EMPLOYMENT THAT RRC MAY EXTEND TO ME, I AND RELIANT RENAL CARE KNOWINGLY, VOLUNTARILY AND INDENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION RELATED TO OR ARISING OUT OF MY EMPLOYMENT WITH THE COMPANY.

(Doc. 75-1 at Page 2.) On October 17, 2012, Gibson filed a signed EEOC charge accusing Center Director Sheila Baraka ("Baraka") of race discrimination and creating a racially hostile work environment. The EEOC sent RRC a notice of charge of discrimination in January of 2013. This charge was eventually settled through a Conciliation Agreement between RRC, Gibson, and the EEOC. This

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys & Networks Corp v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

agreement included a provision prohibiting RRC from retaliating against Gibson for filing the charge. Gibson and RRC also negotiated a separate settlement agreement, with negotiations still ongoing on April 22, 2014 (Doc. 57-6 at Page 1), which Gibson signed on April 29, 2014.

However, Gibson's relationship with RRC suffered during the time period between Gibson filing her EEOC charge and its settlement. In November of 2013, RRC held a mandatory "team building" session, which was conducted by an attorney hired by RRC. During the team building session, the attorney, coming across as threatening, made it clear that complaints about RRC needed to stop and that if employees did not stop complaining, they would be fired. (Satcher Aff. at ¶¶ 13–16; Herring Depo. at 16.) RRC also held a "cultural diversity" session regarding allegations of employees being treated unfairly. (Gibson Depo. at 69–70.) Gibson felt that both of these meetings addressed her filing the EEOC charge, and she found the meetings offensive. (Gibson Depo. at 69–70.) RRC management also began more closely scrutinizing Gibson's job performance. For example, employee Kristy Satcher testified that management was asking a lot of questions about Gibson's work performance during a conference call that concerned an unrelated matter. (Satcher Aff. at ¶ 4.) Satcher interpreted these questions as RRC management searching for a reason to fire Gibson. (Satcher Aff. at ¶ 4.) Baraka

began looking at papers on Gibson's desk and questioning her actions more frequently than she questioned other employees' actions. (Herring Depo. at 22–24.) In March of 2014, Tracey George replaced Baraka as Center Director. RRC tasked Baraka with training George for the position, and during that training Baraka told George about Gibson's EEOC complaint, stating that Gibson was untrustworthy and to "watch out" because Gibson "would stab [George] in the back." (George Aff. at ¶¶ 1–2.)

On April 28, 2014, RRC employee Sandal Dobbins called Baraka and told her that she had overheard Gibson and Satcher discussing access to the shared "S Drive" on RRC's network. The S Drive contains human resources policies, procedures, and forms, as well as a file with EEOC documents. According to RRC, this EEOC file is not supposed to be accessible to employees other than executive officers and those in human resources. At some point after Dobbins spoke to Baraka, Dobbins told Nola McMullen, RRC's Executive Vice President and Chief Operating Officer, about Gibson accessing the S Drive. By the end of the day on April 29, RRC's human resources manager and executive officers were all aware of Dobbins's allegations regarding Gibson and Satcher. (Doc. 57-8.)

On April 30, RRC hired William Long, an IT consultant, who imaged the hard drives of Gibson, Satcher, Baraka, and Dobbins's work computers in order to

determine whether those computers had accessed documents in the EEOC folder. Also on April 30, RRC placed Gibson and Satcher on administrative leave pending the results of Long's investigation. After his examination, Long communicated to RRC that only Gibson's computer had accessed the EEOC folder on the S Drive, and provided a one-page spreadsheet listing the network pathways and EEOC files Gibson's computer had accessed. Long stated that the files Gibson accessed "were all created in 2013 or later." (Long Decl. at ¶ 8.) RRC later provided Long with the sexual harassment document Gibson had allegedly accessed to confirm that Gibson had opened that file. However, Long found no indication that Gibson had searched for or opened that file.

RRC fired Gibson on May 21, 2014 for violating its computer use policy. Krista Jacobs, Director of Human Resources, suggested that RRC interview Gibson to hear her side of the story first, just as Jacobs had done with the twenty people she had fired before Gibson. However, RRC executives decided not to interview Gibson because they were concerned with what Gibson would say. (Doc. 57-23 at Page 1.) When asked what Gibson had done to violate that policy, the RRC employees who made the termination decision gave somewhat conflicting answers: Carl Motz, Chief Financial Officer, stated that Gibson had accessed files that were privileged, particularly a file related to her own EEOC charge. RRC President and

Chief Executive Officer, Barbara Bednar, testified that Gibson reviewed EEOC claims related to other employees, such as the sexual harassment claim, and that she looked at documents related to governing body meetings. Jacobs testified that Gibson was fired for accessing witness statements about her own EEOC charge as well as a document from another EEOC charge.[2]

Gibson was not the first employee to violate RRC's computer use policy. RRC identified Faith Lucifero and David Bandle as "employees who have been investigated, disciplined, or terminated for the same or similar violations as those alleged against [Gibson]." (Doc. 57-18 at Page 10.) RRC disciplined Lucifero by giving her a written warning, and RRC gave Bandle a verbal warning for his first

---

[2] When asked to produce the documents RRC claimed Gibson accessed in violation of the computer use policy, RRC provided the following: (1) an email from Gibson to McMullen, (2) a "communication form" written by Gibson, (3) emails between Gibson and Baraka regarding lab work, (4) an email from Baraka to Gibson, (5) a note written by Gibson reminding employees about patient fluid restrictions, (6) a complaint made about Gibson, which Baraka reviewed with Gibson, (7) pages from a handbook regarding RRC's policy against harassment, (8) notes documenting a meeting between Gibson and a human resources employee, (9) emails between Baraka, Gibson, and Tammy Miller, (10) a note from an unknown author pointing out three patient processing issues that needed to be fixed, (11) a "new employee evaluation" for Donna Dodd dated September 6, 2012, (12) charts documenting the gender and race of hired employees, (13) minutes from board meetings held in 2009 and 2012, (14) a position statement RRC sent to the EEOC addressing Gibson's first charge of discrimination, (15) two SS-4 "Application[s] for Employer Identification Number[s]" filled out by RRC, (16) RRC's certificate of formation in Delaware, (17) RRC's application for authority to transact business in Michigan, (18) a blank chart titled "Fall 2009 Market Review," (19) a chart listing nine different states and referencing "scheduled payday[s]" and "PTO pay out[s]," and (20) a note documenting an October 10, 2012 meeting with Gibson. (Doc. 57-14.) There was no indication that Gibson accessed documents regarding witness statements or documents relating to other EEOC charges.

violation and only terminated him after he violated the computer use policy a second time.

After she was fired, Gibson applied for unemployment compensation with the Alabama Department of Labor (commonly known as the Department of Industrial Relations, or "DIR"). RRC responded to Gibson's request for unemployment compensation, stating that she "was accessing confidential files on our network [and] divulging the info[rmation]." (Doc. 26-3 at Page 13.) Based on RRC's response, the DIR issued a Notice of Determination finding that Gibson committed misconduct in connection with her work, which disqualified her from receiving unemployment compensation. Gibson appealed the DIR's determination, and the Hearings and Appeals Division reversed the DIR's decision, finding that RRC failed to meet "the burden of showing by preponderance of evidence that [Gibson] committed misconduct to which she [was] charged." (Doc. 25-4 at Page 2.)

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. Discussion[3]

### A. Collateral Estoppel

In her motion for partial summary judgment, Gibson contends that RRC is collaterally estopped from asserting its seventeenth affirmative defense. In its answer to Gibson's amended complaint, RRC asserted the following affirmative defense:

> To the extent that Plaintiff engaged in any activity protected by federal law, Plaintiff engaged in misconduct that violated reasonable company policies which serves as a legitimate, non-retaliatory basis for the adverse employment [action] made the subject of Plaintiff's claim.

(Doc. 15 at Page 26; Doc. 16 at Page 26.) Gibson contends that the Hearings and Appeals Division's finding that Gibson did not violate the computer use policy precludes RRC from relitigating the issue.

However, the doctrine of collateral estoppel is inapplicable when the burden of persuasion on that issue has shifted from the party being precluded to the party seeking preclusion. *See, e.g., Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008) (citing Federal Practice & Procedure § 4422 as "explaining

---

[3] Gibson's complaint brings claims for § 1981 race discrimination and discriminatory discharge, as well as a Title VII claim for race discrimination through a racially hostile work environment. However, her response to RRC's motion for summary judgment does not address these three claims or otherwise mention race discrimination. This Court treats Gibson's failure to address these three claims as abandoning them. *See, e.g., Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) ("[A court can] properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment.").

that where the burden of proof varies, collateral estoppel does not necessarily apply because 'it is possible that the initial determination rested on a conclusion that the evidence was in exact equipoise'" ); *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 694 (11th Cir. 1984) (noting that "the chance in allocation of the burden of proof makes a difference") (citing Wright & Miller and the Restatement (Second) of Judgments); 18 Wright & Miller, Federal Practice & Procedure, § 4422 ("Failure of one party to carry the burden of persuasion on an issue should not establish the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue later in litigation."); Restatement (Second) of Judgments § 28(4) (1982) (noting an exception to collateral estoppel when "the burden has shifted to [the party's] adversary").

The Hearings and Appeals Division found that RRC had failed to meet "the burden of showing by preponderance of evidence that [Gibson] committed misconduct to which she [was] charged." (Doc. 25-4 at Page 2.) However, Gibson shoulders the ultimate burden of proving retaliation in this action. Because the burden has shifted from RRC to Gibson, RRC is not precluded from raising the issue of Gibson's violation of the computer use policy as a defense to Gibson's claims. Thus, Gibson's motion for summary judgment as to RRC's seventeenth affirmative defense is due to be denied.

**B.     Hostile Work Environment Claim**

Gibson asserts a claim for retaliatory hostile work environment arising from her filing of the EEOC charge. *See, e.g.*, *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (joining other circuits and recognizing a cause of action for retaliatory hostile work environment). To succeed on a hostile work environment claim, a plaintiff must show the following: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

RRC contends that the alleged retaliatory conduct was not severe or pervasive enough to alter the terms and conditions of Gibson's employment. "This requirement, as defined by the Supreme Court, contains both an objective and a subjective component." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). The victim herself must subjectively perceive the environment to be abusive, and the harassing behavior must also render the work environment one

that a reasonable person would find abusive or hostile. *Id.* "In evaluating the objective severity of the harassment, this court looks at the totality of the circumstances and considers, among other things: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonable interferes with the employee's job performance.'" *Gowski*, 682 F.3d at 1312 (quoting *Miller*, 277 F.3d at 1276).

The evidence supporting Gibson's retaliatory hostile work environment claim can be summarized as follows: (1) RRC held a team building session where employees were strongly discouraged, in a threatening manner, from filing complaints, which Gibson found offensive; (2) RRC held a cultural diversity meeting, which Gibson found offensive; and (3) Baraka targeted Gibson by scrutinizing her work, telling others that she was going to get rid of Gibson, and telling George that Gibson was untrustworthy and would stab her in the back. The two meetings that Gibson found offensive and Baraka bad-mouthing Gibson to George are discrete acts. "Discrete acts cannot alone form the *basis* of a hostile work environment claim," although they can be considered as part of that claim. *Gowski*, 682 F.3d at 1312 (emphasis in original); *see also McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (noting that hostile work environment claims "are

based on the cumulative effect of individual acts" and address acts "whose 'very nature involves repeated conduct,' such as 'discriminatory intimidation, ridicule, and insult'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–16 (2002)).

The only other evidence Gibson points to in support of her retaliatory hostile work environment claim is Baraka's increased scrutiny of her work. However, Gibson has offered no evidence regarding the frequency with which Baraka would look at papers on Gibson's desk or question Gibson's actions, and the evidence does not indicate that this scrutiny was severe. Further, Gibson has offered no evidence showing that Baraka's increased scrutiny unreasonably interfered with Gibson's job performance, as Gibson was not disciplined between the time RRC found out about the EEOC charge and the time she was suspended for accessing the EEOC folder. This increased scrutiny, unaccompanied by more than the three discrete acts discussed above, is insufficiently severe or pervasive to alter the terms and conditions of Gibson's employment. *See, e.g.*, *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810 (8th Cir. 2008) ("Although increased scrutiny might, at some point, amount to a hostile work environment, [general statements that a supervisor closely scrutinized and criticized the plaintiff's work do not support] such a

finding.") Thus, summary judgment in favor of RRC is due to be granted as to this hostile work environment claim.

### C.   Retaliation Claims

Gibson also brings Title VII and § 1981 retaliation claims against RRC. Specifically, Gibson contends that RRC fired her because she filed and successfully pursued an EEOC claim against it. Both parties appear to agree that Gibson's retaliation claims rely on circumstantial evidence. The parties further agree that retaliation claims under both Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Retaliation claims that rely on circumstantial evidence are analyzed using the burden-shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411, U.S. 792, 793 (1973). *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of establishing her prima facie case. To make out a prima facie case of retaliation, a plaintiff must "prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.* 513 F.3d 1261, 1277 (11th Cir. 2008).

Once that prima facie case has been demonstrated, *McDonnell Douglas* next requires defendants to meet their "burden of producing a legitimate, non-discriminatory reason for the challenged employment action." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Finally, "[i]f such a reason is produced, a plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Id.*

### i. Prima Facie Case

RRC does not dispute that Gibson engaged in statutorily protected conduct when she filed and pursued her EEOC charge or when she negotiated or signed the settlement agreement. (Doc. 51 at Page 19 ("Gibson emphasizes that '[w]ithin roughly 24 hours of . . . executing the settlement agreement, she was suspended from her job and then terminated.' On its face, these facts would establish the requisite causal connection.").) Further, RRC does not dispute that Gibson's suspension and termination were materially adverse actions. However, RRC contends that Gibson has failed to establish a causal connection between her protected conduct and her termination because RRC's investigation of her computer use interrupted that causal connection.

"In order to establish the 'causal link' required as part of her *prima facie* case, [the plaintiff] 'need only establish that "the protected activity and the

adverse action were not wholly unrelated."'" *Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999) (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). A plaintiff can meet this element by offering "sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). The Eleventh Circuit has held "that a period as much as one month between the protected expression and the adverse action is not too protracted." *Hidgon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Here, RRC knew about the negotiation of the settlement agreement, as it was the one negotiating that agreement with Gibson. Further, the negotiation, which was still ongoing on April 22, was within one month of Gibson's suspension on April 30 and her termination on May 21. A causal link thus exists.

### ii.    Legitimate Nondiscriminatory Reason & Pretext

Because Gibson has shown a prima facie case of retaliation, the burden of production shifts to RRC to produce a legitimate, nondiscriminatory reason for suspending and firing her. The defendant's burden here is "exceedingly light." *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983). "At this stage of the inquiry, the defendant need not persuade the court that its

proffered reasons are legitimate; the defendant's burden is 'merely one of production, not proof.'" *Id.* (quoting *Lee v. Russell Cty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)). Here, RRC stated that it suspended and fired Gibson because it believed that she had accessed confidential documents in violation of its computer use policy.[4] RRC thus has met its burden of production.

The burden therefore shifts back to Gibson to show that RRC's proffered reason is mere pretext for unlawful retaliation. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Pretext can be demonstrated "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "When a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the] inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Kragor*, 702 F.3d at 1310–1311. The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or

---

[4] Gibson has filed a motion to strike the one-page spreadsheet Long sent to RRC showing that Gibson accessed the EEOC folder due to RRC's failure to disclose that document during discovery. Although Gibson's motion to strike requests that this Court strike this document from RRC's motion for summary judgment, her motion is moot. Even if the Court considers the spreadsheet as evidence, Gibson has presented sufficient evidence of pretext to survive summary judgment. This Court will take up the additional relief Gibson seeks in her motion to strike at the hearing currently set on April 12, 2016.

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

Gibson first points to the timing of her suspension and termination as evidence of pretext. Close temporal proximity between protected activity and the adverse employment decision "is evidence of pretext, through probably insufficient to establish pretext by itself." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (holding that the plaintiff established pretext by showing (1) close temporal proximity of two weeks between the protected activity and the adverse employment decision, (2) that his employer failed to offer a consistent reason for firing the plaintiff, and (3) that the employer deviated from its standard procedures). Here, Gibson has pointed to the settlement negotiations, which were still ongoing on April 22, and their temporal proximity to Gibson's April 30 suspension and May 21 termination.

While this close temporal proximity alone does not establish pretext, Gibson offers other evidence showing pretext. Gibson points to RRC's retaliatory attitude, as shown by the team building session where RRC threatened layoffs if complaints were filed. Gibson also offers evidence that RRC began to more closely scrutinize Gibson's work after learning that she had filed the EEOC charge. *See, e.g.*, *Hairston*

*v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 921 (11th Cir. 1993) ("[S]urveillance 'strongly suggests the possibility of a search for a pretextual basis for discipline, which in turn suggests that subsequent discipline was for purposes of retaliation.'") (quoting B. Schlei & P. Grossman, Employment Discrimination Law 554 (2d ed. 1983)).

As further evidence of pretext, Gibson points to the somewhat contradictory testimony from RRC representatives regarding why she was fired. *See, e.g.*, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("We have recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext."). Bednar testified that Gibson looked at documents related to governing body meetings. However, those board meeting documents were created in 2009 and 2012, and Bednar's reliance on Gibson accessing them contradicts Long's statement that the files accessed by Gibson "were all created in 2013 or later." Jacobs testified that Gibson was fired for accessing statements from witnesses regarding her own EEOC charge and a document regarding an EEOC case involving sexual harassment. Jacobs's reliance on Gibson accessing the document regarding the sexual harassment claim is directly at odds with Long's testimony that he found no evidence that Gibson accessed that specific file. Further, despite

Jacobs's testimony, witness statements were not found within the documents RRC now contends Gibson accessed.

Finally, Gibson points to RRC's deviation from its normal disciplinary procedures regarding violations of the computer use policy. RRC deviated from its normal disciplinary procedures by not giving Gibson a warning for her initial violation, unlike the warnings it gave Lucifero and Bandle. Further, RRC deviated from its normal procedures by not interviewing Gibson before deciding to fire her. These deviations from RRC's normal procedures serve as further evidence of pretext. *See, e.g.*, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) ("[A]n employer's deviation from its own standard procedures may serve as evidence of pretext."). The above-discussed evidence is sufficient at this summary judgment stage to show pretext. Thus, summary judgment on Gibson's § 1981 and Title VII retaliation claims is due to be denied.

### D.    Breach of Contract

Gibson's breach of contract claim focuses on the breach of a non-retaliation clause in the Conciliation Agreement. RRC contends that Gibson's claim fails against Reliant Renal Care, Inc. because it is not a signatory to the Conciliation Agreement. The agreement states that "Reliant Renal Care" is the relevant contracting party. Motz, who testified that he is the Chief Financial Officer of

"Reliant Renal Care," signed the agreement. However, neither Motz's testimony nor any other evidence clarifies the entity on behalf of which Motz signed the agreement. The evidence is entirely unclear as to which Defendant, if not both, is bound to the agreement, thus precluding summary judgment.

RRC also contends that Gibson's breach of contract claim fails because it did not retaliate against Gibson, resting on its reasons for summary judgment on Gibson's retaliation claims. However, Gibson has raised a genuine issue of material fact as to whether RRC retaliated against her, and a genuine issue of material fact similarly exists as to whether RRC breached the non-retaliation clause in the Conciliation Agreement. Summary judgment is thus due to be denied.

### E.   RRC's Motion to Strike Gibson's Jury Demand

RRC filed a motion to strike Gibson's jury demand based on the provision in her employment application waiving the right to a trial by jury. Gibson does not dispute that this is a valid contractual waiver of the right to a trial by jury. However, the evidence does not indicate the entity against which Gibson waived her right to a jury trial. *See, e.g.*, *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996) ("[A] jury waiver is a contractual right and generally may not be invoked by one who is not a party to the contract."); *Husley v. West*, 966 F.2d 579, 581 (10th Cir. 1992) ("Generally, a jury waiver provision in a contract or lease

affects only the rights of the parties to that contract or lease."). The top of the application indicates that Gibson was applying for employment with Reliant Renal Care, Inc., not Reliant Renal Care-Alabama, LLC. However, in their motion for summary judgment, Defendants state that "[i]t is the Defendants [sic] position that Reliant Renal Care, Inc., and Reliant Renal Care-Alabama, LLC, are two separate and distinct legal entities and that Reliant Renal Care, Inc., is not Gibson's employer." (Doc. 27 at Page 3.) The waiver provision itself offers no clarification, referring to "any offer of employment that RRC may extend," and referring to "Reliant Renal Care" as the contracting party. It appears that Reliant Renal Care, Inc. is the contracting party with the right to invoke and enforce the jury waiver provision as to claims asserted against it. Since both Defendants contend that Reliant Renal Care-Alabama, LLC is Gibson's employer, the motion to strike is due to be denied. This Court will take up this issue at a later time if necessary.

## IV. CONCLUSION

For the reasons stated above, Gibson's motion for summary judgment (Doc. 25) is due to be DENIED. RRC's motion for summary judgment (Doc. 26) is due to be GRANTED in part and DENIED in party. Specifically, RRC's motion for summary judgment (Doc. 26) is due to be GRANTED as to Gibson's hostile work environment claims and discrimination claim and DENIED as to Gibson's

retaliation claims and breach of contract claim. RRC's motion to strike Gibson's jury demand (Doc. 75) is due to be DENIED. Finally, Gibson's motion to strike (Doc. 54) is MOOT as to the relief requested at this summary judgment stage, with this Court to address the further requested relief at the April 12, 2014 hearing. A separate order consistent with this opinion will be entered.

DONE AND ORDERED ON MARCH 29, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

182184